BENJAMIN ASHUROV SBN 271716
Bashurov@KB-Ash.com
LYNN M. TERREBONNE SBN 248964
Lterrebonne@KB-Ash.com
KB ASH Law Group PC
7011 Koll Center Pkwy, Suite 160
Pleasanton, CA 94566
Telephone:   415.754.9346
Facsimile:   415.952.9325

*Attorneys for Plaintiff*
PACIFIC SOLUTION MARKETING, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PACIFIC SOLUTION MARKETING, INC.<br><br>Plaintiff,<br><br>v.<br><br>MASTER CUTLERY, INC.<br><br>Defendant. | CASE NO. 5:13-CV-01469-JAK-PLA<br><br>**PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF**<br><br>Date:  September 29, 2014<br>Time:  10:00 a.m.<br>The Honorable John A. Kronstadt |

1

KB ASH LAW GROUP P.C
7011 KOLL CENTER PKWY SUITE 160
PLEASANTON, CA 94566

**Table of Contents**

**Page**

**Contents**

I.   INTRODUCTION ........................................................................................... 1

II.   BACKGROUND ............................................................................................ 2

III.   SUMMARY OF CONCLUSIONS................................................................ 3

IV.   ARGUMENT ................................................................................................ 3

  A.   LEGAL STANDARDS .............................................................................. 3

    1.   The general principles of claim construction. ......................................... 3

    2.   The legal principles specific to design patent claim construction............ 4

    3.   The legal principles of functionality in design patent analysis. ............... 7

  B.   CONSTRUCTION OF THE '441 PATENT CLAIM ................................ 9

    1.   The court should adopt plaintiff's proposed claim construction which is based on federal circuit design patent claim construction principles. ............. 9

    2.   The court should reject defendant's proposed claim construction because it improperly parses the individual design elements........................................ 9

    3.   The court should reject defendant's proposed claim construction because it improperly segregates the claim into functional and ornamental elements. 11

V.   CONCLUSION ................................................................................ 19

ii

## Table of Authorities

**Page**

**Cases**

*180s, Inc. v. Gordini U.S.A.*, F.Supp.2d 714 (D. Md. 2010) .................................. 16

*Apple v. Samsung Electronics Co., Ltd.*, No. 11-CV-01846-LHK, 2012 WL 3071477 (N.D. Cal. July 27, 2012) ................................................................ 16

*Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370 (Fed. Cir. 2002) ........ 6

*Crocs Inc. v. Int'l Trade Com'n*, 598 F.3d 1294 (Fed. Cir. 2010) ............. 1, 3, 6, 11

*Depaoli v. Daisy Mfg. Co., Inc.*, Civil Action No. 07ocv-11778-DPW, 2009 WL 2145721 (D. Mass. July 14, 2009) ................................................................ 17

*Dexas Int'l v. Office Max, Inc.*, Civ. Action No. 6:07cv396, 2009 WL 252164 (E.D. Tex. Jan. 30, 2009) .......................................................................................... 7

*Dobson v. Dornan*, 118 U.S. 10 (1886) ................................................................ 6

*Five Star Manufacturing, Inc. v. Ramp Lite Mfg., Inc.*, 44 F.Supp.2d 1149 (D. Kan. 1999) ................................................................................................................. 16

*Genentech, Inc. v. Boehinger Mannheim GmbH*, 989 F.Supp. 359 (D. Mass. 1997) 4

*Gorham Co. v. White*, 81 U.S. 511 (1871) ............................................................. 5

*Hupp v. Siroflex of America, Inc.*, 122 F.3d 1456 (Fed. Cir. 1997) ................ 4, 8, 11

*In re Blum*, 374 F.2d 904 (CCPA 1967) ............................................................. 12

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111 (Fed. Cir. 2004) ............................................................................................................ 3

*Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323 (Fed. Cir. 2001) 4

*L.A Gear, Inc. v. Thom McAn Shoe, Co.*, 988 F.2d 1117 (Fed. Cir. 1993) ..3, 5, 7, 8, 10, 11, 17, 18

*Liton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423 (Fed. Cir. 1984) ....................... 5

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) ................ 1, 3

*OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396 (Fed. Cir. 1997) ........... 4, 15

iii

KB ASH LAW GROUP P.C
7011 KOLL CENTER PKWY SUITE 160
PLEASANTON, CA 94566

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ...............................3, 4, 12

*Richardson v. Stanley Works, Inc.*, 597 F.3d 1288 (Fed. Cir. 2010).................13, 14

*Richardson v. Stanley Works, Inc.,* 610 F.Spp.2d 1046 (D. Ariz. 2009)...........13, 14

*Victronics Corp. v. Conceptronic, Inc.,* 90 F.3d. 1576 (Fed. Cir. 1996).................. 4

*Yao-Hung Huang v. Marklyn Group, Inc.*, Civil No. 11-cv-01765-REB-BNB, 2012 WL 4856720 (D. Colo. Oct. 11, 2012)........................................................ 16

**Statutes**

35 U.S.C. § 112 ...................................................................................................... 4

35 U.S.C. § 171 .................................................................................................... 13

35 U.S.C. § 282 ...................................................................................................... 8

**Other Authorities**

Manual of Patent Examining Procedure § 1503.01 (8th ed. 2006) ......................... 6

Manual of Patent Examining Procedure § 1503.01 (9th ed. 2014) ......................... 6

KB ASH LAW GROUP P.C

7011 KOLL CENTER PKWY SUITE 160

PLEASANTON, CA 94566

iv

KB ASH LAW GROUP P.C
7011 KOLL CENTER PKWY SUITE 160
PLEASANTON, CA 94566

Plaintiff, Pacific Solution Marketing, Inc. ("Plaintiff"), by and through counsel, presents to the Court its Opening Claim Construction Brief in accordance with Court's February 6, 2014 Order Setting Interim and Patent Deadlines, (Doc. No. 32). Claim construction is provided pursuant to *Markman v. Westview Instruments, Inc.,* 52 F.3d 967 (Fed. Cir. 1995) (*en banc*) for U.S. Patent No. D673,441.

## I.   INTRODUCTION

This case involves, in part, Plaintiff's claims for infringement of United States Design patent No. D673,441 (the "'441 patent"). *See* a copy of the '441 patent bearing Bates numbers PS000049-52, attached to the Declaration of Lynn M. Terrebonne ("Terrebonne Decl.) as **Exhibit A**. The parties disagree as to the construction of the claim of the '441 patent. Plaintiff submits that the claim of the '441 patent is better represented by the illustrations contained in the patent than they could be by a verbal description as is being urged by the Defendant, Master Cutlery, Inc. ("Defendant"). Using a verbal description as Defendant suggests would entail a significant risk that an undue emphasis would be improperly placed on particular features of the claimed design or otherwise focus on distinct features of the design rather than on the design as a whole. *See Crocs Inc. v. Int'l Trade Com'n*, 598 F.3d 1294, 1302 (Fed. Cir. 2010) (*en banc*).

Plaintiff, therefore, asks for a construction of the design patent that identifies the figures of the patent, *i.e.*

> A knife of a certain design as shown in Figures 1 through 7 of U.S. Patent No. D673,441.

///
///

1

KB ASH LAW GROUP P.C
7011 KOLL CENTER PKWY SUITE 160
PLEASANTON, CA 94566

## II.     BACKGROUND

The present litigation arises, in part, from Defendant's alleged infringement of the '441 patent.  The patent is directed to the design of a revolver knife.

A single application was filed in the prosecution of the '441 patent, U.S. Patent Application No. 29/409,119 (the "'119 application), *see* the copy of the pertinent parts of the '199 application bearing Bates numbers PS000025-43 and 53-112, attached to the Terrebonne Decl. as **Exhibit B**.  The '441 patent claimed the ornamental design for a revolver knife as shown and described in the seven figures show in the patent.  *See* Terrebonne Decl., **Exhibit A**, at PS000050-52.

The Examiner issued a Notice of Allowance, *see* Terrebonne Decl., **Exhibit B**, at PS000076-77, without issuing an Office Action rejecting the claims based on the prior art identified in her Notice of Reference Cited, *id.* at PS000083-84 and PS000054.  The Examiner, in the Examiner's Amendment that accompanied the Notice of Allowance, required the applicant to amend Figure 1 "to show the same [light] textural treatment" so that there would be consistency among the views of Figures 1 through 3.  *Id.* at PS000081.  The patentee also agreed to change the title included in the application from "INTERCHANGEABLE REVOLVER AND KNIFE" to "REVOLVER KNIFE" because the revolver base portion was not in fact functional.

The '119 application was unintentionally abandoned following a failure to timely file corrected drawings.  *Id.* at PS000073 and PS000055.  The '119 application was revived following the filing of the correct drawings, a terminal disclaimer, disclaiming a period of the patent's term equivalent to the period of abandonment.  *Id.* at PS000055, PS000062 and PS000060.  The '119 application subsequently issued as the '441 patent without the issuance of any further Office Actions or Examiner's Amendments.

/ / /

2

KB ASH LAW GROUP P.C
7011 KOLL CENTER PKWY SUITE 160
PLEASANTON, CA 94566

## III.   SUMMARY OF CONCLUSIONS

The Court should adopt Plaintiff's proposed construction, which is consistent with the dictates of the Federal Circuit's *en banc* decision in *Egyptian Goddess, Inc. v. Swisa*, 543 F.3d 665, 679-80 (Fed. Cir. 2008) and its rulings in *Crocs, Inc. v. Int'l Trade Com'n*, 598 F.3d 1294, 1302-3 (Fed. Cir. 2010); and *L.A Gear, Inc. v. Thom McAn Shoe, Co.*, 988 F.2d 1117, 1125 (Fed. Cir. 1993), and reject Defendant's proposed construction which segregates design elements, in direct contradiction to the Federal Circuit ruling in *Crocs, Inc.* and excludes allegedly functional elements, a task that, if necessary, can be handled based on a fully developed factual record during summary judgment practice or at trial.

## IV.   ARGUMENT

### A.   LEGAL STANDARDS

#### 1.   The general principles of claim construction.

The scope of a patent claim "is a question of law to be decided exclusively by the court." *Markman*, 52 F. 3d at 977. "It is a 'bedrock principle' of patent law that the claims of a patent define the invention to which a patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (citation omitted). The claim construction analysis, in the context of utility patents, therefore, must remain centered on the language of the claims. *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115-16 (Fed. Cir. 2004). The words of a utility patent claim "are generally given their ordinary and customary meaning," which "is the meaning that the term would have to a persons of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1312-13 (citation omitted).

The Federal Circuit has explained that the claim construction inquiry begins by looking at the intrinsic evidence: the language of the claims, the specification, and the prosecution history. *Victronics Corp. v. Conceptronic, Inc.,* 90 F.3d. 1576,

3

KB ASH LAW GROUP P.C

7011 KOLL CENTER PKWY SUITE 160
PLEASANTON, CA 94566

1582 (Fed. Cir. 1996). A court, in its discretion, also may consider extrinsic evidence, including, but not limited to expert testimony, *Phillips*, 415 F.3d at 1318, but only if the meaning of a claim is not clear after a review of the intrinsic evidence, *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1332 (Fed. Cir. 2001).

Finally, the Federal Circuit has cautioned that a validity analysis should not be a regular component of the claim construction process. *See Phillips*, 415 F.3d at 1327 ("While we have acknowledged the maxim that claims should be construed to preserve their validity, we have not applied that principle broadly, and we have certainly not endorsed a regime in which validity analysis is a regular component of claim construction."); *see also Genentech, Inc. v. Boehinger Mannheim GmbH*, 989 F.Supp. 359, 367 (D. Mass. 1997) (the determination whether the interpretation meets the requirements of 35 U.S.C. § 112 "is not appropriate for a *Markman* hearing").

### 2. The legal principles specific to design patent claim construction.

A design patent is fundamentally different from a utility patent, but in some areas, the law pertaining to each overlaps. For example, although the respective tests for infringement are different, both types of patents require the district court to conduct claim construction proceedings. *Egyptian Goddess Inc. v. Swisa, Inc.*, 543 F.3d at 679.

A design patent protects the novel, ornamental features of a claimed design. *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1305 (Fed. Cir. 1997). The figures in a design patent not only comprise the bulk of the disclosure, but also set forth the limits of the claim. *See Hupp v. Siroflex of America, Inc.*, 122 F.3d 1456, 1463 (Fed. Cir. 1997) (holding "[a] design patent contains no written description; the drawings are the claims to the patented subject matter").

4

<em>KB ASH LAW GROUP P.C</em><br/>7011 KOLL CENTER PKWY, SUITE 160<br/>PLEASANTON, CA 94566

The Supreme Court set forth the standard for the infringement of a design patent in *Gorham Co. v. White*, 81 U.S. 511, 528 (1871):

> [I]n the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Id.* Additionally, the ordinary observer analysis requires the fact finder to view the patented design in its entirety not on a feature by feature basis. *See*, *L.A Gear, Inc.*, 988 F.2d at 1125. For over 100 years, *Gorham* stood as the sole standard for design patent infringement. Then, in *Liton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423 (Fed. Cir. 1984), a three judge panel of the Federal Circuit created the "point of novelty test," which in addition to the test set out in *Gorham*, required that the accused design appropriate the "novelty" of the claimed design. *Id.* at 1444. The Federal Circuit, however, in its *en banc Egyptian Goddess* decision abrogated the point-of-novelty test, holding that "in accordance with *Gorham* …the 'ordinary observer' test should be the sole test for determining whether a design patent has been infringed." *Egyptian Goddess*, 543 F.3d at 678.

The *en banc Egyptian Goddess* court, after noting that no particular form of claim construction had been prescribed in design patent cases, left the ultimate decision on "the level of detail to be used in describing the claim design … within the trial court's discretion." *Id.* at 679. The Federal Circuit, after acknowledging the difficulties involved in describing a design verbally, held that "the preferable course ordinarily will be for a district court **not** to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design." *Id.*

5

KB ASH LAW GROUP P.C
7011 KOLL CENTER PKWY SUITE 160
PLEASANTON, CA 94566

(emphasis added).  Additionally, the Federal Circuit cautioned that a verbal construction risks placing "undue emphasis on particular features of the design and the risk that a finding of fact will focus on each individual described feature in the verbal description rather than on the design as a whole."  *Id.* at 679-80.  The Federal Circuit went on to note that:

> While it may be unwise to attempt a full description of the claimed design, a court may find it helpful to point out …various features of the claimed design as they relate to the accused design and prior art … [A] trial court can usefully guide the finder of fact by addressing a number of other issues that bear on the scope of the claim.  Those include such matters as describing the role of particular conventions in design patent drafting, such as the role of broken lines; assessing and describing the effect of any representations that may have been made in the course of the prosecution history and distinguishing between those features of the claimed design that are ornamental and those that are purely functional.

*Id.* (internal citations and quotations omitted).

Further guidance on design patent claim construction is provided by *Crocs, Inc.*, in which the Federal Circuit stated:

> Design patents are typically claimed as shown in drawings, and claim construction must be adapted to a pictorial setting.  *See, e.g.*, *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1377 (Fed. Cir. 2002) (construing a design patent claim as meaning 'a tray of a certain design as shown in Figures 1-3').  Thus an illustration depicts a design better "than it could be by any description and a description would probably not be intelligible without the illustration."  *Id.*, citing *Dobson v. Dornan*, 118 U.S. 10, 14, 6 S.Ct. 946, 30 L.Ed. 63 (1886).  "[A]s a rule, the illustration in the drawing views is its own best description."  Manual of Patent Examining Procedure § 1503.01 (8th ed. 2006).

*Crocs, Inc.*, 598 F.3d at 1302-3.  *See also* Manual of Patent Examining Procedure

6

§ 1503.01 (9th ed. 2014).

Multiple courts, following these principles have declined to provide verbal description of the scope of the claim in design patent cases.  The Eastern District of Texas, in *Dexas Int'l v. Office Max, Inc.*, Civ. Action No. 6:07cv396, 2009 WL 252164 (E.D. Tex. Jan. 30, 2009), refused to "construe" several design patents by providing detailed verbal descriptions.

> Pointing out such features could easily result in a claim construction akin to a determination of points of novelty - - a prong of the infringement analysis for design patent infringement which was specifically discarded by the Federal Circuit in *Egyptian Goddess*. … Moreover, the [c]ourt may guide the jury by addressing issues of broken lines in design patent drafting; the proper role of prosecution history; and the distinction between ornamental and functional features among other issues when instructing the jury.

*Id.* at *5 (citations omitted).

The foregoing authorities establish that the use of detailed verbal descriptions in the construction of design a patent claim is disfavored.  Hence, the proposed claim construction approach suggested by Defendant, involving the parsing and analysis of a multitude of individual design elements and segregating functional aspects from those that are ornamental in nature, contravenes the approach endorsed by the *en banc Egyptian Goddess* court and invites judicial error.

### 3. The legal principles of functionality in design patent analysis.

Establishing the functionality of a claimed design is one way to invalidate a design patent or portions thereof.  Functionality, therefore, is an affirmative defense that must be proved by the party asserting it.  *L.A Gear, Inc.*, 988 F.2d at 1123. "Applying the presumption of validity, 35 U.S.C. § 282, invalidity of a design

7

patent must be established by clear and convincing evidence." *L.A Gear, Inc.*, 988 F.2d at 1123.

A design is only functional and invalid "when the appearance of the claimed design is 'dictated by' the use or purpose of the article." *Id.* "If the particular design is essential to the use of the article, it cannot be the subject of a design patent." *Id.* However, "[w]hen there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose." *Id.* Additionally, "the utility of each of the various elements that comprise the design is not the relevant inquiry … The elements of the design may indeed serve a purpose, but it is the ornamental aspect that is the basis of the design patent." *Id.* In other words it is the **functionality** of the design of the article of manufacture, not the **function** of the article that is the proper inquiry. *See Hupp*, 122 F.2d at 1460 ("The function of the article itself must not be confused with the 'functionality' of the design of the article.").

Functional elements of a design may be claimed when they also bear an ornamental aspect, *e.g.*, in circumstances where there are several ways to achieve the underlying function. *L.A Gear, Inc.*, 988 F.2d at 1123. Resolving whether a claimed design is functional or ornamental is a question of fact. *Hupp*, 122 F. at 1460 ("The jury found that the [design patent] was 'not ornamental.'"). Moreover, because "an article of manufacture necessarily serves a utilitarian purpose," the utility of individual elements is irrelevant to the question of functionality, as it is the design in its entirety that provides the basis for the patent. *LA. Gear, Inc.,* 988 F.2d at 1123. "When there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose." *Id.*

///

///

KB ASH LAW GROUP P.C
7011 KOLL CENTER PKWY, SUITE 160
PLEASANTON, CA 94566

8

## B.    CONSTRUCTION OF THE '441 PATENT CLAIM

### 1.    The court should adopt plaintiff's proposed claim construction which is based on federal circuit design patent claim construction principles.

Plaintiff proposes the following construction of the claim of the '441 patent:

> A knife of a certain design as shown in Figures 1 through 7 of U.S. Patent No. D673,441.

This proposed construction is consistent with the principles set by the Federal Circuit in *Egyptian Goddess,* and *Croc,s Inc.,* which are discussed *supra.*  This construction, therefore, will avoid the risks identified by the *en banc Egyptian Goddess* court, of placing undue emphasis on particular features of the design and of obtaining a finding of fact that is focused on each individual design feature in the verbal description rather than on the design as a whole.  *See Egyptian Goddess*, 543 F. 3d at 679-80.  The Court, therefore, should adopt Plaintiff's proposed claim construction.

### 2.    The court should reject defendant's proposed claim construction because it improperly parses the individual design elements.

Defendant has proposed the following claim construction:

> The ornamental design features as shown in Figures 1 through 7 of Patent No. D673,441 including at least a multi-tiered notch on the top portion of the barrel as shown; an opening shaped like a bullet in the blade as shown; elongated actuate portions extending from the barrel to the cylinder without a gap, the top actuate portion wider than the lower accurate portion as shown; large, widely-spaced cylinder flutes as shown; a smooth cylinder surface behind the flutes as shown; a recoil shield behind the cylinder as shown, a blunt hammer spur

9

as shown; knurling in the stocks located on the handle as shown; two bolts spaced directly above the trigger as shown; an extractor rod with an enlarged end as shown; a rounded end to the barrel as shown; and excluding as purely functional at least the outer shape of the knife blade as shown and the liner lock mechanism consisting of a plate with ridges as shown that prevents the folding of each blade from the fully opened position until it is pushed to the side to allow for movement of the blade.

*See* Terrebonne Decl., **Exhibit C**, Mater Cutlery Inc.'s Disclosure of Its Initial Proposed Claim Construction and Extrinsic Evidence at 2.

Defendant's proposed claim construction is based upon an improper claim construction methodology (which one might call a "Point of Ornamentality" approach) that purports to separate the claimed design into individual design elements and to segregate the functional and ornamental elements of the claim design. Defendant asks the Court to construe the claimed design, feature by feature, in an extremely detailed manner rather than seeking a claim construction that properly directs the fact-finder to the claimed design in its entirety. *See L.A. Gear, Inc.,* 988 F.2d at 1125. While the Court is not precluded from adopting a detailed verbal description of the claimed design, doing so runs the risks warned of in *Egyptian Goddess* – placing undue emphasis on individual design elements and obtaining a finding of fact that is not based on the design as a whole. *Egyptian Goddess*, 534 F.3d at 679-80. Furthermore, such a detailed construction can result in a reversible infringement ruling. As pointed out by the Federal Circuit when overruling the International Trade Commissions infringement ruling in *Crocs, Inc.*:

[T]he commission placed undue emphasis on particular details of its written description of the patented design. Those details became a mistaken checklist for infringement. Without a view to the design as a whole, the Commission used minor differences between the patented design and the accused products to prevent a finding of infringement. In other words, the concentration

10

KB ASH LAW GROUP P.C
7011 KOLL CENTER PKWY SUITE 160
PLEASANTON, CA 94566

on small differences in isolation distracted from the overall impression of the claimed ornamental features. *Crocs, Inc.*, 598 F.3d at1303-4.

The Defendant's approach, which seeks to segregate individual design elements and the functional elements from the ornamental elements, is akin to the now-defunct "Point of Novelty" approach, in which pre-existing design elements were individually segregated from novel ones in the claim construction process. Defendant's proposed claim construction, therefore, conflicts with the tenet that a design patent protects the overall appearance of the claimed design. Defendant does so by ignoring a reality that is fundamental to all design patent analyses, *i.e.* both infringement and the functionality, of a design patent should be based on the overall design claimed in the patent and should not occur on a design element by design element basis. *See Crocs, Inc.*, 598 F.3d at1303 and *L.A. Gear, Inc.,* 988 F.2d at 1123.

**3.      The court should reject defendant's proposed claim construction because it improperly segregates the claim into functional and ornamental elements.**

a)      *Defendant's functionality argument does not comport with the dictates of congress and federal circuit precedence.*

Defendant's assertion that two design elements, the outer shape of the blade and the liner lock mechanism, should be excluded from the claimed design as being functional also does not comport with the dictates of the Congress and the Federal Circuit. The only designs that qualify for design patent protection are, *inter alia*, "… ornamental designs for *an article of manufacture …*" 35 U.S.C. § 171 (emphasis added). Thus, patentable industrial designs consist of articles of manufacture that inherently have *functional characteristics and features*. *See, Hupp,* 122 F.3d at 1460 ("… the fact that the article of manufacture serves a function is a prerequisite of design patentability, not a defeat thereof."). The Federal Circuit and its predecessor courts have consistently held that a patentable

11

KB ASH LAWGROUP P.C
7011 KOLL CENTER PKWY. SUITE 160
PLEASANTON, CA 94566

design is a single expression that necessarily integrates ornamental and functional elements. *See In re Blum*, 374 F.2d 904, 907 (CCPA 1967) ("A design is a unitary thing and all of its portions are material in that they contribute to the appearance which constitutes the design."). A design patent, therefore, protects the overall effect of the depicted design elements, whether such elements are new or old, functional or ornamental, significant or insignificant.

Thus, any attempt to dissect an overall design into functional and ornamental elements for claim construction purposes is unworkable. Most often, the elements of a design are fully integrated into, and inseparable from, the overall design. Factoring out and ignoring functional elements is an artificial enterprise that distorts the patentee's claims to the design's overall appearance. In most cases, factoring out individual features of an article of manufacture during claim construction because they have a function would leave little left of the patented design to compare to the accused design when assessing infringement.

This case provides a stark example of the illogical and improper consequences of the Defendant's approach. The Defendant's proposed claim construction writes the outer shape of the blade out of the claimed design – "[t]he ornamental design for a revolver **knife** …" Terrebonne Decl., **Exhibit A** at PS000049. This fundamentally changes the character of the claimed design, from the design for a knife to the design for a knife handle, and makes it impossible for the fact finder to assess infringement and validity based on the entirety of the design. This illustrates why the Defendant's proposed construction methodology is not the law.

> b)   *The facts and procedural posture of this matter are distinguishable from those of the cases on which defendant is likely to rely.*

Although claim construction is not the proper time to discuss issues of functionality and validity, *see Phillips*, 415 F.3d at 1327, Plaintiff will address the

12

KB ASH LAW GROUP P.C
7011 KOLL CENTER PKWY SUITE 160
PLEASANTON, CA 94566

functionality arguments it anticipates will be made by Defendant in its claim construction brief.  The case law, we believe that Defendant will rely on to support its functionality argument, *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288 (Fed. Cir. 2010), given that it formed a basis for the initial report of Master Cutlery's expert, Mr. Tom Anderson ("Anderson"), is distinguishable from the facts presented in this matter.  *See* Terrebonne Decl., **Exhibit** C, the May 29, 2014 Initial Expert Report of Tom Anderson ("Initial Anderson Report") at ¶ 10.  The article of manufacture that was the subject of the design claimed by Richardson, in his case against Stanley Works, Inc., was described by the *Richardson* court as "a multi-function carpentry tool that combines a conventional hammer with a stud climbing tool and a crowbar." *Richardson*, 597 F.3d at 1290, *see also* U.S. Patent No. D507,167 ("the '167 patent), attached to the Terrebonne Decl. as **Exhibit D**.  The article of manufacture that is the subject of the '441 patent is a knife with a handle in the shape of a revolver.  There is no suggestion that the '441 patent claims the design for a multi-functional tool.  *See* the Examiner's Amendment issued in the '199 application, Terrebonne Decl., **Exhibit B** at PS000030 ("[T]he title has been changed from "INTERCHANGABLE REVOLVER AND KNIFE" to **"REVOLVER KNIFE,"** since the revolver base portion is not, in fact, functional.") (emphasis in original).  The revolver knife in this matter is clearly distinguishable from that in *Richardson* – a multi-functional tool, the design of which is "dictated by its functional purpose." *Richardson*, 597 F.3d at 1294.  The ruling in *Richardson*, therefore, is not controlling in this matter given the factual distinctions between the two articles of manufacture.

The district court in, *Richardson v. Stanley Works, Inc.,* 610 F.Spp.2d 1046 (D. Ariz. 2009) ("*Richardson I*"), construed the claim of the '167 patent to exclude its functional elements based on the following reasoning:

13

KB ASH LAW GROUP P.C
7011 KOLL CENTER PKWY SUITE 160
PLEASANTON, CA 94566

> Richardson's claim is for the ornamental design of a multifunction stud climbing and carpentry tool, as shown and described in the '167 patent. His design incorporates four primary utilitarian elements: the handle, the hammer-head, the jaw, and the crow-bar. *The overall configuration of these four elements is dictated by the functional purpose of the tool and therefore is not protected by his design patent.* A designer seeking to incorporate a hammer-head, jaw, and crow-bar on a single handle will naturally and *inevitably* place the jaw and hammer-head together on one end and the crow-bar on the other end. To place the jaw and hammer-head on opposite ends of the handle would distribute the tool's mass, decreasing the striking force and interfering with the user's swing. It would also adversely encumber the crow-bar, which would have to be placed together with one of the other elements and thus would no longer fit into narrow spaces.

*Id.* at 1050 (emphasis added) (citations to exhibits omitted). The overall configuration of elements of the revolver knife, which is depicted in the '441 patent, is not dictated by the functional purpose of the knife, *i.e.* cutting. As such, the revolver knife depicted in the '441 patent is distinguishable from the multi-functional tool that was the subject of Richardson's patent. As such, the ruling in *Richardson I* also is not controlling in this matter given the factual distinctions between the two articles of manufacture.

Additionally, this matter is distinguishable from *Richardson I* and *OddzOn Products, Inc.*, 122 F.3d 1396, an additional case which formed a basis for Anderson's opinion (*see* Terrebonne Decl., **Exhibit C**, the Initial Anderson Report at ¶ 8), based on the point in the proceedings when claim construction, infringement, and validity will be/were determined. The district court's ruling, in *Richardson I*, was issued after a bench trial on the merits. *Richardson*, 597 F.3d at 1290. The claim construction ruling issued by the *Richardson I* court, therefore, was based on a fully developed factual record regarding the functional elements of

14

KB ASH LAW GROUP P.C
7011 KOLL CENTER PKWY SUITE 160
PLEASANTON, CA 94566

KB ASH LAWGROUP P.C
7011 KOLL CENTER PKWY SUITE 160
PLEASANTON, CA 94566

the claimed design. As such, the district court in *Richardson I*, could ensure that its claim construction would not allow a mechanism for Stanley Works, Inc. to avoid the clear and convincing evidence standard for establishing invalidity based on functionality. The issues of infringement and validity also were determined by the district court, thus avoiding the risk of placing undue emphasis on individual design elements and obtaining a finding of fact that is not based on the design as a whole.

Similarly, the procedural posture of *OddzOn Products, Inc.*, 122 F.3d 1396, is distinguishable from this matter. While the Federal Circuit in *OddzOn Products, Inc.* upheld a district court claim construction that excluded functional elements of a claims design, *id.* at 1405, the lower court's ruling was issued in conjunction with a summary judgment ruling involving infringement and validity, *id.* at 1399. The claim construction in *OddzOn Products, Inc.*, therefore, was based on a fully developed factual record; did not run the risk of placing undue emphasis on individual design elements and obtaining a finding of fact that is not based on the design as a whole; and ensured that the defendant would not be able to avoid the clearly convincing evidence standard applicable to functionality.

The claim construction ruling in this matter, unlike those in *Richardson I* and *Oddzon Products, Inc.*, will occur prior to the close of discovery. The Court, therefore, will not have the benefit of a fully developed factual record when making its ruling. The absence of a fully developed factual record also increases the risk that a functionality determination, which could be used by Defendant to invalidate the claimed design, will be made in a context that does not require the use of the clear and convincing evidence standard. Additionally, the issuance of a detailed claim construction excluding functional design elements runs the risk of the jury placing undue emphasis on individual design elements and making factual findings that are not based on the design of the '441 patent as a whole. As such, the Court should reject Defendant's proposed claim construction.

The Court has the discretion to refrain from making a functionality determination until the parties have fully developed the facts in this matter.

> It is well within the Court's discretion to delay making a determination of functionality at this time. Multiple courts have delayed issuing a functionality ruling during the claim construction phase of a design patent litigation. For example, the *District of Maryland, in 180s, Inc. v. Gordini U.S.A.*, F.Supp.2d 714 (D. Md. 2010), refrained from distinguishing the design claim's ornamental and functional elements in its claim construction ruling because it had discretion to wait until a later state of the litigation to make that decision, as long as [it did so] before proceeding to the … comparison of the claim and accused article … Unlike *OddzOn Products* and *Richardson*, this case is not on the verge of proceeding to the comparison of the accused article and the claim. On the contrary, it would be premature to compare [the accused product] to the [design patent claim] because discovery is not complete and the parties have not fully briefed these issues. There is therefore no rush to distinguish the claim's ornamental and functional features, and [the defendant] does not provide any other convincing rationale for not waiting until the close of discovery to resolve these functionality questions.

*Id.* at 729 (citations omitted); *see also Five Star Manufacturing, Inc. v. Ramp Lite Mfg., Inc.*, 44 F.Supp.2d 1149, 1156 (D. Kan. 1999) (The District of Kansas addressed the issue of excluding functional elements in its claim construction but allowed for its claim construction "to be further limited at trial by factual determinations regarding the ornamentality of the included features."); *Apple v. Samsung Electronics Co., Ltd.*, No. 11-CV-01846-LHK, 2012 WL 3071477 at *1 (N.D. Cal. July 27, 2012) (The Northern District of California deferred its ruling on any limitations to the scope of the design patent that may arise from functional elements.); *Yao-Hung Huang v. Marklyn Group, Inc.*, Civil No. 11-cv-01765-REB-BNB, 2012 WL 4856720 at *3 (D. Colo. Oct. 11, 2012) (The District of Colorado

16

KB ASH LAWGROUP P.C
7011 KOLL CENTER PKWY SUITE 160
PLEASANTON, CA 94566

KB ASH LAW GROUP P.C
7011 KOLL CENTER PKWY SUITE 160
PLEASANTON, CA 94566

delayed addressing the issue of functionality at the claim construction phase which occurred prior to the commencement of discovery.); *Depaoli v. Daisy Mfg. Co., Inc.*, Civil Action No. 07ocv-11778-DPW, 2009 WL 2145721 at \*9 (D. Mass. July 14, 2009) (The District of Massachusetts concluded, in its claim construction order, that "determining which, if any features of the [design patent] are ornamental and which are purely functional must await a later stage in the proceedings, such as summary judgment practice or trial."). As such, if the Court is of the opinion that the design of the '441 patent *may* include some elements which fall within the Federal Circuits interpretation of "functional," it should accept Plaintiff's proposed claim construction and defer a determination of which, if any, of the design elements are purely "functional" until summary judgment practice and/or trial.

        c)     *The limited extrinsic evidence available at this stage of the litigation does not support a finding of functionality.*

The extrinsic evidence presently available does *not* support Defendant's assertion that the outer shape of the blade and the liner-lock mechanism depicted in the figures of the '441 patent are "purely functional." *See* Terrebonne Decl., **Exhibit C**, Mater Cutlery's Inc.'s Disclosure of Its Initial Proposed Claim Construction and Extrinsic Evidence at 2. Defendant's extrinsic evidence, the Initial Anderson Report, merely states that the outer shape of the blade "is purely functional and contains no ornamental features." Terrebonne Decl., **Exhibit C** Initial Anderson Report at ¶ 13. Anderson also states, in his report, that the liner-lock mechanism "contain[s] no ornamental features and [is] purely functional to the operation of the knife." *Id.* at ¶ 14. Anderson, however, **does not** address the issue critical to distinguishing between ornamental and functional elements of a design – whether "there are several ways to achieve the function of an article of manufacture." *See, L.A. Gear, Inc.*, 988 F.2d at 1123.

Plaintiff, unlike Defendant, has come forward with rebuttal extrinsic evidence that directly addresses the issue of whether there are several ways to

17

achieve the function of the article of manufacture relevant in this matter.  Plaintiff's expert, Bernard Levine ("Levine") in his July 22, 2014 Initial Report ("Initial Levine Report"), opines that:

> There are many different options that a knife designer can choose from when creating a design for a folding knife. The shape of the blade, the shape of the handle, the type of pivot, and the type of locking mechanism are design choices.

The Initial Levine Report attached to the Terrebonne Decl. as **Exhibit E**, at ¶¶ 6(b) and 16.  Levine also provides multiple examples of different designs for the shape of the blade, the shape of the handle, the type of pivot, and the type of locking mechanism from which a knife design may choose from when designing a folding knife.  *See* Terrebonne Decl., **Exhibit E** at ¶ 14 and the exhibits cited therein.  The Initial Levine Report and the photographs contained in Exhibits H through K thereof show that the design claimed in the '441 patent, when taken as a whole, including the shape of the blade, the shape of the handle, the type of pivot, and the type of locking mechanism depicted in the figures of the '441 patent, is primarily ornamental and not dictated by the function of the knife because there are several ways to achieve function of the knife depicted in the figures of the '441 patent – the standard of ornamentality set by the Federal Circuit in *L.A. Gear, Inc.  See L.A. Gear*, *Inc.*, 988 F.2d at 1123.

The Defendant's extrinsic evidence purports to establish the functionality of the outer shape of the blade and the liner lock mechanism depicted in the figures of the '441 patent *using an improper functionality*.  The Court, therefore, should adopt Plaintiff's proposed claim construction:

> A knife of a certain design as shown in Figures 1 through 7 of U.S. Patent No. D673,441.

because the extrinsic evidence proffered by Plaintiff establishes that the out shape

18

or the blade and the liner lock mechanism, as well as, the remaining design elements depicted in the figures of the '441 patent, are primarily ornamental.

## V.   CONCLUSION

The claimed design of the revolver knife is best represented by the illustrations contained in the '441 patent.  The claimed design is relatively uncomplicated, straightforward, and well-represented by the drawings contained in the '441 patent.  Attempting to segregate the design into individual design elements and exclude allegedly functional elements will not assist the jury in determining the overall appearance of the claimed design.  Properly instructed, the jury should be able to discern the similarities and differences between the claimed design and the accused products.

The Court, therefore, should adopt Plaintiff's proposed construction, which is supported by the extrinsic evidence and is consistent with the dictates of the Federal Circuit's *en banc* decision in *Egyptian Goddess* and its rulings in *Crocs, Inc.* and *L.A. Gear*, *Inc.*  The Court should reject Defendant's proposed construction which segregates design elements, in direct contradiction to the Federal Circuit ruling in *Crocs, Inc.*, and excludes allegedly functional elements, a task that, if necessary, can be handled based on a fully developed factual record during summary judgment practice and/or at trial.

July 28, 2014.

By:   /s/Lynn M. Terrebonne

LYNN M. TERREBONNE SBN 248964
Lterrebonne@KB-Ash.com
BENJAMIN ASHUROV SBN 271716
Bashurov@KB-Ash.com
KB ASH LAW GROUP P.C.
7011 Koll Center Pkwy, Suite 160
Pleasanton, CA 94566
Telephone: 415.754.9346
Facsimile:  415.952.9325

19



*Attorneys for Plaintiff*
PACIFIC SOLUTION MARKETING, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2014 a true and accurate copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

G. Warren Bleeker
CHRISTIE, PARKER & HALE LLP
655 N. Central Avenue, Suite 2300
Glendale, California 91203-1445
warren.bleeker@cph.com

By: _____ /s/Lynn M. Terrebonne
LYNN M. TERREBONNE SBN 248964
Lterrebonne@Kb-ash.com

BENJAMIN ASHUROV SBN 271716

Bashurov@KB-Ash.com

KB ASH LAW GROUP P.C.
7011 Koll Center Parkway, Suite 160
Pleasanton, CA 94566
Telephone: 415.754.9346
Facsimile: 415.952.9325

*Attorneys for Plaintiff*
PACIFIC SOLUTION MARKETING, INC.

20

PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF          CASE NO. 5:13-CV-01469-JAK-PLA